JACOBO ORTIZ, conocido por JACOB CRUZ ORTIZ, demandante y recurrente, *v.* ENRIQUE CRUZ PABÓN, ETC., ET AL., demandados y recurridos.

*Número:* R-70-14        *Resuelto:* 24 de junio de 1970

*Enrique Báez García* y *Víctor E. Báez,* abogados de los recurrentes; *Carlos García Méndez* y *A. Ramírez Silva,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

En busca de su verdadero padre, Jacobo Ortiz interpuso demanda de filiación e hizo partes demandadas a su madre natural Virginia Ortiz Ocasio, al esposo de ésta Enrique Cruz Pabón y a los herederos testamentarios del causante Jaime Acosta Forés, quienes eran su hija adoptiva Herminia Acosta López y su viuda Delia L. López.

La Sala de Mayagüez del Tribunal Superior dictó sentencia desestimando la demanda sin considerar sus méritos, sobre un supuesto de prescripción. Según los hechos alegados y documentos en el récord, el demandante Jacobo Ortiz nació el 20 de junio de 1927. Se alegó que fue producto de las relaciones extramaritales de Virginia Ortiz Ocasio y Jaime Acosta Forés. Ella era soltera y Acosta Forés era casado con Delia L. López.

El 26 de diciembre de 1930 Virginia Ortiz Ocasio, de estado soltera, contrajo matrimonio con Enrique Cruz Pabón, de estado divorciado. Consta del Acta de Matrimonio

que Enrique Cruz Pabón no había procreado hijos en el matrimonio anterior, pero no consta que Virginia Ortiz Ocasio, soltera, hubiera procreado un hijo.

Cuando el demandante tenía 17 años de edad, su madre Virginia Ortiz Ocasio y su esposo Enrique Cruz Pabón hicieron constar en declaración al efecto que el demandante Jacobo Ortiz había sido procreado por ellos antes de contraer matrimonio, y conforme a las disposiciones de la Ley Núm. 117 de 12 de mayo de 1943, solicitaron del Registrador Demográfico que hiciera constar su legitimación por subsiguiente matrimonio en el Acta de Nacimiento del demandante, acta ésta en que aparecía ser hijo de Virginia Ortiz Ocasio sin que se hiciera constar quien era su padre. Conforme a lo solicitado así lo hizo constar el Registrador Demográfico en Acta de Nacimiento, que sustituyó a la anterior, quedando el demandante a todos los fines demográficos registrado como hijo verdadero de Virginia Ortiz y Enrique Cruz Pabón, legitimado por subsiguiente matrimonio.

Jaime Acosta Forés falleció bajo testamento el 12 de agosto de 1964, casado con Delia L. López, siendo sus herederos una hija adoptiva, la demandada Herminia Acosta López y su viuda. El 16 de julio de 1965 se interpuso la demanda de filiación. Según se ha expresado, no se llegó a los méritos porque la Sala sentenciadora determinó que la acción estaba prescrita. Aplicó la prescripción de 15 años del Art. 1864 del Código Civil, ed. 1930.(¹) Sostuvo que habiendo llegado a la mayoridad el demandante el 20 de junio de 1948, al interponerse la acción en 16 de julio de 1965 habían transcurrido 17 años, vencido ya el término prescriptivo de 15. Expedimos auto de revisión para considerar la referida sentencia.

---

(¹)Art. 1864: "La acción hipotecaria prescribe a los veinte años, y las personales que no tengan señalado término especial de prescripción, a los quince."

La primera causa de acción de la demanda fue dirigida contra los codemandados Virginia Ortiz Ocasio y Enrique Cruz Pabón, y conforme a los hechos expuestos se pidió, en virtud de dicha primera causa de acción, la nulidad del estado y del asiento de legitimación efectuado en 1944 en el Registro Demográfico. La segunda, tercera y cuarta causas de acción fueron dirigidas a los codemandados herederos de Jaime Acosta Forés, y se alegaron hechos conducentes a probar el nacimiento del demandante en virtud de relaciones concubinarias entre Acosta Forés y Virginia Ortiz; a impugnar el testamento por preterición, y a reclamar el haber hereditario correspondiente al demandante conforme a los bienes dejados por el causante.

Los demandados Virginia Ortiz y su esposo Cruz Pabón se allanaron a la primera causa de acción que les concernía. Aceptaron que el demandante no había sido procreado por ellos antes de casarse, y si bien lo legitimaron como hijo habido antes de las nupcias, fue ese un hecho falso, realizado con el propósito de darle un apellido al demandante, ya un jovencito en Escuela Superior.

No es necesario que nos detengamos a discutir a fondo si se aplicaba o no en este caso el período prescriptivo de 15 años o período prescriptivo alguno en cuanto a la primera causa de acción, dirigida a anular el estado y el asiento de legitimación del demandante como hijo de su madre natural y del codemandado Enrique Cruz Pabón. Si los hechos en su día probaren que en efecto el demandante nació de relaciones concubinarias entre su madre y Acosta Forés, es discutible si a la acción para anular la declaración e inscripción de la legitimación por falsa e inexistente en la realidad se le aplicaría término prescriptivo alguno, sobre todo cuando se trata de la declaración judicial de la inexistencia de un hecho falso que afectaría el estado personal del individuo mientras éste vive. Pero no es necesario resolver

ahora el punto en un sentido u otro por las razones que seguimos exponiendo:

De probarse que el demandante fue procreado por el causante Acosta Forés en 1927, él no hubiera tenido a la fecha de su nacimiento acción filiatoria alguna por ser el producto de una relación de las entonces llamadas adulterinas, siendo Acosta Forés casado.

Bajo el mismo supuesto de que se probare la filiación, la Ley Núm. 229 de 12 de mayo de 1942 concedía al demandante la condición de hijo natural en lugar de adulterino, susceptible de ser reconocido por acción voluntaria del padre o de sus herederos, y susceptible de quedar legitimado por un subsiguiente matrimonio de sus padres entre sí. Sin embargo, no fue sino por la Ley Núm. 243 de 12 de mayo de 1945, enmendatoria de la Ley Núm. 229 anterior, que al demandante se le reconocía, para probar la procreación, una acción judicial de reconocimiento forzoso, de no serlo por acto voluntario del padre o de sus herederos. Tal acción filiatoria forzosa, no obstante, era limitada para el solo efecto de llevar el apellido del padre. Este era el estado de derecho cuando el demandante llegó a su mayoridad el 20 de junio de 1948.

Conforme a la Constitución del Estado Libre Asociado de Puerto Rico, la Asamblea Legislativa de Puerto Rico aprobó, en 20 de agosto de 1952, la Ley Núm. 17 decretando que "todos los hijos tienen respecto a sus padres y a los bienes relictos por éstos, los mismos derechos que corresponden a los hijos legítimos." Esta declaración de igualdad se adoptó retroactiva al 25 de julio de 1952, fecha de vigencia de la Constitución.

Aun en el caso extremo de una persona nacida dentro de matrimonio, con la presunción de ser hijo del marido, le reconocimos una causa de acción para buscar a su verdadero padre en caso de que el esposo en realidad no lo hubiera

procreado, ni fuera su padre verdadero. *Agosto* v. *Javierre*, 77 D.P.R. 471 (1954).

█ Probada que fuera la verdadera filiación, una declaración judicial filiatoria de esta verdadera filiación anularía y dejaría sin efecto cualquier estado personal contrario con que apareciera esa persona en el Registro Demográfico como hijo legítimo de otro o legitimado. Así, una declaración filiatoria en su día, decretando que el demandante es hijo de Acosta Forés de probarse tal procreación, anularía y dejaría sin efecto *ipso iure* el estado y el asiento de legitimación contrario en el Registro Demográfico, demostrativo de que el demandante era hijo legitimado de Cruz Pabón. En esas circunstancias, y aun cuando aceptáramos que la acción para decretar la nulidad del asiento de legitimación estaba prescrita por el transcurso de 15 años, ello no podría derrotar la acción filiatoria en sí, ya que no hay nada en la ley ni en la norma de derecho aplicable que requiera que para que el tribunal pudiera resolver la acción filiatoria en sí, fuera necesaria una previa declaración judicial de la nulidad del asiento de legitimación.

La consecuencia inevitable de la declaración judicial de filiación del demandante como hijo de Acosta Forés, sería la de destruir el estado artificial del Registro de hijo legitimado de Cruz Pabón. Desde luego, y conforme a *Javierre*, supra, Cruz Pabón como supuesto padre debía ser notificado del procedimiento y oído, como en efecto lo fue, ya que una sentencia determinando distinta filiación podría afectarle en su derecho potencial de heredero del demandante. No solamente Cruz Pabón fue hecho parte y oído en el procedimiento, sino que de acuerdo con las alegaciones se allanó a que se decretara la nulidad del estado y del asiento de legitimación por ser tal estado de legitimación inexistente, basado en una declaración falsa.

█ En las circunstancias antes expresadas, la primera causa de acción dirigida únicamente a obtener la declara-

ción judicial de la nulidad del asiento de legitimación era superflua, o por lo menos, no constituía un requisito previo esencial en derecho para que el tribunal conociera del resto de la demanda en lo relativo al hecho de la filiación y de la herencia. Aunque así no lo fuera, y asumiendo que se aplicara el término prescriptivo de 15 años, queda aún el hecho adicional de que no fue hasta el 20 de agosto de 1952, en virtud de la Ley Núm. 17, que el demandante podía ejercer la acción filiatoria *plena* que ejerce en este caso, o sea, la de que con la filiación podía tener también derecho a la herencia a la muerte de su verdadero padre, sin que estuviera limitada la acción al apellido. Véase: *Ocasio* v. *Díaz*, 88 D.P.R. 676 (1963).

■ De aplicarse el período prescriptivo de 15 años el punto de partida para contar sería el 20 de agosto de 1952, y al 16 de julio de 1965 no había transcurrido todavía dicho período. En ausencia de disposición de ley expresa en contrario, la prescripción de una acción empieza a contar desde la fecha en que la acción ha podido ejercerse.—Art. 1869 del Código Civil, ed. 1930.

En este caso de filiación sólo hay un término fatal para ejercitar la acción. Siendo ya mayor de edad el demandante al fallecer su supuesto o alegado padre, la acción debía interponerla dentro de un año de dicho fallecimiento, conforme al Art. 126 del Código Civil. Según hemos resuelto, este término es el más riguroso y exigente de la caducidad, más que de la mera prescripción. *Ortiz Rivera* v. *Sucn. González Martínez*, 93 D.P.R. 562 (1966). Fallecido Acosta Forés el 12 de agosto de 1964, la demanda interpuesta el 16 de julio de 1965 lo fue dentro de dicho término.

■ Finalmente, sabido es que los derechos hereditarios se rigen por la ley vigente a la fecha del fallecimiento. *Ex Parte Orona Acevedo*, 87 D.P.R. 840 (1963) y casos ahí citados: *Ocasio* v. *Díaz*, supra. La ley vigente al fallecimiento de Acosta Forés era la Núm. 17 de 20 de agosto de 1952,

antes transcrita que permitiría al demandante, probada la filiación, reclamar la herencia en condiciones iguales a las de cualquier otro hijo.

Por los fundamentos expresados, *se revocará la sentencia que desestimó la demanda por razón de estar prescrita la acción, y se devolverá el caso para que la Sala sentenciadora lo considere y resuelva en los méritos, y de decretar que el demandante es hijo del causante Acosta Forés, determine su haber hereditario conforme a los bienes relictos alegados y cuya existencia se probare; y para procedimientos ulteriores compatibles con lo aquí fallado.*

El Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Rigau, no intervinieron.