# 2007 DTA 113

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE CAROLINA**
**PANEL XII**

LEONEL CARRASCO
Apelante

v.

VIOLETA ALBANIA NAVARRO JOSÉ
Apelada

---

ROBERTO ZAVALA VILLA
Apelante

v.

NELMARIE NIEVES FLORES, RAMÓN CASTILLO NIEVES
Apelados

Núms. Cons. KLAN-07-00267 / KLAN-07-00614

San Juan, Puerto Rico, a 14 de septiembre de 2007

Panel integrado por su Presidente, el Juez Ortiz Carrión,
el Juez Brau Ramírez y la Juez Fraticelli Torres

*PER CURIAM*

**TEXTO COMPLETO DE LA SENTENCIA**

I

Se trata de dos demandas sobre impugnación de reconocimiento voluntario de paternidad, instadas ante el Tribunal de Primera Instancia, Sala Superior de Carolina. Mediante las sentencias apeladas, el Tribunal de

Primera Instancia desestimó ambas demandas, por el fundamento de que había transcurrido el término de tres (3) meses para instar la acción de impugnación establecido por el Artículo 117 del Código Civil, 31 L.P.R.A. sec. 465.

Por tratarse de una misma cuestión de derecho, hemos optado por consolidar los casos.

Confirmamos.

## II

El apelante, en el recurso KLAN-2007-00267, lo es el señor Leonel Carrasco, quien es casado y residente de Santurce.

El apelante sostuvo una relación extramarital con la apelada Violeta Albania Navarro José, quien también reside en Santurce. Posteriormente, la apelada quedó embarazada. Dio a luz a una niña el 12 de enero de 2006. La apelada le representó al apelante que él era el padre de la criatura.

Movido por las representaciones de la apelada, varios días después del nacimiento de la menor, el 23 de enero de 2006, el apelante la reconoció voluntariamente. La menor fue inscrita como hija suya y de la apelada en el Registro Demográfico.

Según el apelante, cinco (5) meses después de la inscripción, la apelada le expresó que la menor no era su hija.

El 9 de agosto de 2006, transcurridos casi siete (7) meses a partir de la inscripción en el Registro, el apelante presentó una demanda de impugnación de reconocimiento voluntario ante el Tribunal de Primera Instancia, Sala Superior de Carolina. En su demanda, el apelante alegó que tenía *"serias dudas de la paternidad de la menor, entre éstas, manifestaciones recientes de la propia [apelada] indicando que el [apelante] no es el padre biológico de la menor, lo cual evidencian que el consentimiento prestado al momento [de] reconocer voluntariamente a [la] menor pudo haber estado viciado al ser inducido a error por la [apelada], mediante dolo"*.

El apelante solicitó al Tribunal que ordenara a las partes realizarse pruebas de paternidad, para que *"la realidad biológica coincida con la realidad jurídica"*.

La apelada contestó la demanda y alegó que la reclamación del apelante había caducado. La apelada presentó además una reconvención, en la que adujo que el apelante y su esposa tenían capacidad económica para proveer una pensión a favor de la menor.

El Tribunal designó como defensora judicial de la menor a la Procuradora Especial de Relaciones de Familia. La Procuradora compareció y presentó una moción de desestimación en la que alegó que la causa de acción del apelante había caducado.

Luego de otros trámites, el Tribunal celebró la vista en torno a la solicitud de desestimación. Durante la vista, el apelante alegó que él prestó su consentimiento para el reconocimiento de la menor mediante fraude. Insistió en que se ordenara a las partes someterse a pruebas de sangre para determinar la paternidad de la niña.

El 24 de enero de 2007, mediante la sentencia apelada, el Tribunal de Primera Instancia declaró con lugar la moción de desestimación presentada y ordenó el archivo de la demanda, por haber caducado la causa de acción del apelante.

El apelante acudió entonces ante este Tribunal.

Por su parte, el apelante, en el recurso KLAN-2007-00614, lo es el señor Roberto Zavala Villa. Para 2004, el apelante sostuvo una relación sentimental con la apelada Nelmarie Nieves Flores, quien reside en Carolina.

Posteriormente, la apelada quedó embarazada. El 11 de agosto de 2004, la apelada dio a luz a un niño. La apelada le representó al apelante que el menor era su hijo. El 17 de agosto de 2004, el apelante reconoció voluntariamente al menor y éste fue inscrito como hijo suyo y de la apelada en el Registro Demográfico.

Para la fecha en que la apelada estuvo relacionada sentimentalmente con el apelante, ella también mantenía una relación con el Sr. Ramón Castillo Nieves. Luego de nacido el menor, la apelada lo llevaba a relacionarse con este último.

A los diez (10) meses de la inscripción, el 23 de junio de 2005, el apelante presentó una demanda de impugnación de reconocimiento voluntario ante el Tribunal de Primera Instancia, Sala Superior de Fajardo.

La apelada compareció por derecho propio, contestó la demanda y se allanó a la solicitud del apelante. En su contestación, la apelada explicó que *"no tengo ningún inconveniente en someterme junto a mi hijo... a cualquier tipo de examen científico si así lo decidiera este Honorable Tribunal"*. La apelada expresó que, de ordenarse las referidas pruebas, debía citarse al señor Castillo para que también fuera sometido a los exámenes. La apelada solicitó además que se trasladara el caso a la jurisdicción de Carolina, por ser residente de ese municipio.

Oportunamente, el Tribunal ordenó el traslado del caso a la Sala de Carolina, donde le fue asignado su número actual. Al apelante se le fijó una pensión a favor del menor.

Luego de otros trámites, el Tribunal celebró una vista. Según el apelante, la apelada declaró bajo juramento que tenía dudas sobre quién era el padre biológico del menor. El Tribunal ordenó a las partes y al menor someterse a las pruebas de ADN.

El Tribunal también ordenó que se emplazara al señor Castillo, quien compareció por derecho propio al litigio mediante una solicitud de intervención.

En su comparecencia, el señor Castillo expresó que *"[y]o reconozco que estuve íntimamente con la [apelada] y de esa relación salió el menor..., quien por error fue inscrito a nombre del [apelante]"*. El señor Castillo aclaró que la apelada *"me llevaba a mi hijo desde pequeño y compartía con el menor y con mi padre"*. Añadió que *"tengo fotos de él pequeño conmigo"*.

El Tribunal permitió al señor Castillo intervenir en el caso. ■

A pesar de su postura inicial ante el foro de Primera Instancia, la apelada no se sometió a las pruebas de ADN dispuestas por el Tribunal. En su lugar, presentó una moción de desestimación en la que alegó que la acción instada por el apelante había caducado.

Luego de otros trámites, el 27 de marzo de 2007, mediante la sentencia apelada, el Tribunal ordenó la desestimación de la demanda y le ordenó al apelante cumplir con la pensión alimentaria fijada a favor del menor.

El apelante acudió entonces ante este Tribunal.

### III

En sus alegatos, los apelantes plantean que el Tribunal de Primera Instancia erró al desestimar sus causas de

acción.

La filiación, según se conoce, es el estado civil de la persona, determinado por virtud de su nacimiento, adopción o de otro hecho legalmente suficiente al efecto. De ordinario, se basa en la realidad biológica del nacimiento dentro de una familia, la que lleva aparejada la asignación de derechos y obligaciones para la persona y para sus padres y familiares. *González v. Echevarría,* 169 D.P.R. ___ (2006), **2006 J.T.S. 184**, a la pág. 515; *Mayol v. Torres,* 164 D.P.R. ___ (2005), **2005 J.T.S. 50**, a la pág. 1080; *Castro v. Negrón,* 159 D.P.R. 568, 579-580 (2003); *Sánchez v. Sánchez,* 154 D.P.R. 645, 660 (2001); *Calo Morales v. Cartagena Calo,* 129 D.P.R. 102, 136-137 (1991).

El principio básico que da lugar a la filiación es la procreación o generación física. *Castro v. Negrón,* 159 D.P.R. a la pág. 580; *Sánchez v. Sánchez,* 154 D.P.R. a las págs. 660-661; *Calo Morales v. Cartagena Calo,* 129 D.P.R. a la pág. 111.

Sin embargo, éste no es el único factor. *González v. Echevarría,* **2006 J.T.S. 184**, a la pág. 520 n. 3; *Mayol v. Torres,* **2005 J.T.S. 50**, a la pág. 1081; *Castro v. Negrón,* 159 D.P.R. a la pág. 580; *Sánchez v. Sánchez,* 154 D.P.R. a la pág. 661; *Calo Morales v. Cartagena Calo,* 129 D.P.R. a la pág. 112.

La paternidad o maternidad biológica puede no tener consecuencias jurídicas en aquellos casos en que se desconoce o no puede establecerse quiénes son los progenitores de una persona. También puede ocurrir que quien figure como progenitor no lo sea biológicamente. *Mayol v. Torres,* **2005 J.T.S. 50**, a la pág. 1081; *Sánchez v. Sánchez,* 154 D.P.R. a las págs. 660-661.

La procreación es de fácil determinación respecto de la madre, probado el hecho del parto y la identidad del hijo. La identidad del padre, sin embargo, no siempre es de fácil solución. *Sánchez v. Sánchez,* 154 D.P.R. a la pág. 662.

Existe un nuevo giro en la doctrina cuyo objetivo es tratar, en lo posible, de que la realidad biológica coincida con la realidad jurídica. *González v. Echevarría,* **2006 J.T.S. 184**, a la pág. 515; *Mayol v. Torres,* **2005 J.T.S. 50**, a la pág. 1081; *Castro v. Negrón,* 159 D.P.R. a la pág. 580; *Sánchez v. Sánchez,* 154 D.P.R. a la pág. 662.

El Tribunal Supremo de Puerto Rico ha expresado que *"[e]n materia de filiación, el Derecho puertorriqueño ha ido abriendo camino a través de la enmarañada jungla de prejuicios y convencionalismos sociales y tecnicismos de ley para hacer que brille la verdad y se reconozca a todos los fines legales la relación biológica entre padres e hijos".* *Sánchez v. Sánchez,* 154 D.P.R. a la pág. 662; *Ramos v. Marrero,* 116 D.P.R. 357, 358 (1985).

El Tribunal Supremo de Puerto Rico ha expresado, además, que *"la filiación debe ser la confirmación jurídica de la realidad biológica".* *Mayol v. Torres,* **2005 J.T.S. 50,** a la pág. 1083.

La filiación puede producirse de dos formas: por el matrimonio o por el reconocimiento voluntario o forzoso del padre. *González v. Echevarría,* **2006 J.T.S. 184,** a la pág. 515; *Mayol v. Torres,* **2005 J.T.S. 50**, a la pág. 1083; *Castro v. Negrón,* 159 D.P.R. a la pág. 583; *Sánchez v. Sánchez,* 154 D.P.R. a la pág. 663.

Se presume hijo del cónyuge varón al que nació bajo las siguientes circunstancias: (1) dentro de los 180 días siguientes a la celebración del matrimonio, si el marido no impugna su legitimidad; (2) después de ese plazo y durante el matrimonio; y (3) antes de los 300 días siguientes a la disolución del matrimonio. 31 L.P.R.A. secs. 461 y 462; *Castro v. Negrón,* 159 D.P.R. a la pág. 583; *Sánchez v. Sánchez,* 154 D.P.R. a la pág. 663; *Almodóvar v. Méndez Román,* 125 D.P.R. 218, 235 (1990).

Se trata de una presunción controvertible. *Castro v. Negrón*, 159 D.P.R. a la pág. 586; *Sánchez v. Sánchez,* 154 D.P.R. a la pág. 665; *Calo Morales v. Cartagena Calo,* 129 D.P.R. a la pág. 117.

Por su parte, la filiación no matrimonial se produce mediante el reconocimiento por el padre a favor del hijo, ya bien sea voluntariamente, o forzosamente, cuando se le impone al padre el reconocimiento mediante el ejercicio de la acción judicial correspondiente. *Castro v. Negrón*, 159 D.P.R. a la pág. 584; *Almodóvar v. Méndez Román,* 125 D.P.R. a las págs. 236-237.

El reconocimiento voluntario es la declaración mediante la cual una persona declara su paternidad o maternidad biológica, generalmente bajo la creencia de que el hijo es suyo. *Mayol v. Torres,* **2005 J.T.S. 50**, a la pág. 1084; *Sánchez v. Sánchez,* 154 D.P.R. a la pág. 664. Se trata, según ha señalado el Tribunal Supremo de Puerto Rico, de un acto individual, personalísimo, unilateral, formal, expreso, solemne, puro e irrevocable. *González v. Echevarría,* **2006 J.T.S. 184**, a las págs. 515-516; *Mayol v. Torres,* **2005 J.T.S. 50**, a la pág. 1084.

Pero como *"la relación biológica no es una condición necesaria ni suficiente de la relación filial"*, es posible el reconocimiento de una persona como hija propia aunque biológicamente no lo sea, ya porque así lo quiere el declarante o porque se le hace creer que es verdaderamente el progenitor. Véase *González v. Echevarría,* **2006 J.T.S. 184**, a la pág. 515. ■

Ahora bien, el Tribunal Supremo de Puerto Rico ha expresado que el padre puede impugnar este tipo de filiación cuando su consentimiento ha sido obtenido por medio de un vicio. *González v. Echevarría,* **2006 J.T.S. 184**, a las págs. 516-517; *Sánchez v. Sánchez,* 154 D.P.R. a la pág. 667; *Almodóvar v. Méndez Román,* 125 D.P.R. a la pág. 243.

En *Mayol v. Torres*, adoptando la norma seguida en España, de donde proviene nuestro Código Civil, el Tribunal Supremo de Puerto Rico reconoció que el padre puede impugnar el reconocimiento por su inexactitud o falta de veracidad, esto es, por resultar contrario a la realidad biológica. El Tribunal Supremo de Puerto Rico aclaró sin embargo, que en estos casos, la referida impugnación *"tiene que estar fundada en alegaciones específicas que, dándolas como ciertas, tiendan a demostrar a satisfacción del juzgador que existe una verdadera duda sobre la exactitud de la filiación derivada del reconocimiento voluntario"*. **2005 J.T.S. 50**, a la pág. 1090.

En estos casos se favorece la utilización de pruebas científicas y de histocompatibilidad para determinar la filiación. *Mayol v. Torres,* **2005 J.T.S. 50**, a las págs. 1088-90; *Vincenti v. Saldaña,* 157 D.P.R. 37, 48-49 (2002); *Tosado v. Tenorio,* 140 D.P.R. 859, 867 (1996); *Rivera Pérez v. León,* 138 D.P.R. 839, 849 (1995); *Moreno Álamo v. Moreno Jiménez,* 112 D.P.R. 376, 387 (1982); *Ortiz v. Peña,* 108 D.P.R. 458, 464-467 (1979).

El Tribunal Supremo de Puerto Rico ha reconocido que los desarrollos tecnológicos introducidos en este campo superan los medios disponibles para el legislador decimonónico al momento de adoptarse las leyes relacionadas con la paternidad y la filiación en nuestro ordenamiento. *Mayol v. Torres*, **2005 J.T.S. 50**, a la pág. 1088.

Las pruebas actuales de histocompatibilidad y de ADN permiten determinar con un alto grado de certidumbre científica la verdadera filiación de una persona. *Rivera Pérez v. León,* 138 D.P.R. a las págs. 845-846; *Ortiz v. Peña,* 108 D.P.R. a las págs. 462-469.

Sobre este particular, la Regla 82 de las de Evidencia dispone, en lo pertinente:

*"(A) ...*

*(C) En cualquier acción en que la paternidad sea un hecho pertinente, el tribunal podrá a iniciativa propia, o*

*deberá, a moción de parte oportunamente presentada, ordenar a la madre, hijo o hija y al presunto padre o alegado padre biológico a someterse a exámenes genéticos. ...*

*(D) Si el tribunal determina que de los hallazgos y conclusiones de los peritos, según revelado por la evidencia basada en los exámenes, el alegado padre no es el padre del niño, el hecho de la paternidad se resolverá de acuerdo a las mismas. ...".*

32 L.P.R.A. Ap. IV, R. 82.

El Tribunal Supremo de Puerto Rico ha resuelto que, cuando se impugna la filiación de un hijo por no corresponder ésta con la realidad biológica, debe acudirse a este tipo de pruebas para adjudicar la controversia. *Mayol v. Torres,* **2005 J.T.S. 50**, a la pág. 1090.

El Tribunal expresó que: *"[a]l arribar a esta conclusión, pesa en nuestro ánimo la convicción de que el elemento básico de la filiación es la realidad biológica, que la validez de un reconocimiento está vinculada a la veracidad del mismo y que en nuestro ordenamiento jurídico impera una política pública sobre la búsqueda de la verdad en cuanto a la filiación".* *Mayol v. Torres,* **2005 J.T.S. 50**, a la pág. 1090.

La acción de un padre para impugnar la legitimidad de un hijo nacido dentro de su matrimonio está gobernada por el Artículo 117 del Código Civil, el cual dispone que este tipo de acción *"deberá ejercitarse dentro de los tres meses siguientes a la inscripción del nacimiento en el registro si el marido se hallare en Puerto Rico, y de los seis meses si estuviere fuera de Puerto Rico, a contar desde que tuvo conocimiento del nacimiento".* 31 L.P.R.A. sec. 465.

Este término, según ha aclarado el Tribunal Supremo de Puerto Rico, es de caducidad, lo que implica que, al transcurrir el plazo, se extingue la acción del reclamante. *González v. Echevarría,* **2006 J.T.S. 184**, a las págs. 517-518; *Castro v. Negrón,* 159 D.P.R. a las págs. 595-596; *Rivera v. Jaume,* 157 D.P.R. 562, 571 (2002); *Calo Morales v. Cartagena Calo,* 129 D.P.R. a la pág. 119; *Santiago Ojeda v. Cruz Maldonado,* 109 D.P.R. 143, 146 (1979).

Nuestro ordenamiento no contiene disposición alguna que gobierne el término para instar la acción impugnatoria de filiación cuando se trata de un hijo nacido fuera del matrimonio. Originalmente, el Tribunal Supremo de Puerto Rico resolvió que debía aplicarse a estas demandas de impugnación del reconocimiento el término prescriptivo de quince años establecido por el Artículo 1864 del Código Civil, 31 L.P.R.A. sec. 5294, para acciones personales que no tienen otro plazo asignado. *Alcaide v. Morales,* 28 D.P.R. 278, 294 (1920).

En *Almodóvar v. Méndez Román,* sin embargo, el Tribunal Supremo revocó esta norma y determinó que en estos casos también debía aplicar el término de caducidad de tres o seis meses establecido por el Artículo 117 del Código Civil para las acciones relacionadas con los hijos matrimoniales. 125 D.P.R. a la pág. 260.

El Tribunal Supremo de Puerto Rico concluyó que el plazo de quince años establecido por el Artículo 1864 resultaba *"irrazonablemente largo".* *Almodóvar v. Méndez Román,* 125 D.P.R. a la pág. 245. El Tribunal también determinó que el emplear términos distintos para la impugnación de la filiación de hijos matrimoniales y no matrimoniales era contrario a la garantía constitucional a la igual protección de las leyes, por lo que debía aplicarse un único término para todos los casos. *Almodóvar v. Méndez Román,* 125 D.P.R. a las págs. 254-257.

La norma es, por lo tanto, que la acción de impugnación del reconocimiento debe ser presentada dentro de un término de caducidad de tres meses a partir del acto del reconocimiento cuando, como en los presentes casos, el demandante no ha estado ausente de Puerto Rico. *González v. Echevarría,* **2006 J.T.S. 184**, a la pág. 518; *Mayol v. Torres,* **2005 J.T.S. 50**, a las págs. 1086-7; *Castro v. Negrón,* 159 D.P.R. a la pág. 596; *Rivera v. Jaume,* 157

D.P.R. a las págs. 571-572; *Sánchez v. Sánchez,* 154 D.P.R. a la pág. 670; *Almodóvar v. Méndez Román,* 125 D.P.R. a la pág. 260.

Ahora bien, para anular el reconocimiento voluntario, se han admitido varias acciones: (1) la nulidad absoluta del acto; (2) la impugnación por vicios del consentimiento del declarante; y (3) la impugnación por no coincidir el estado filiatorio con la realidad biológica. Véase, *Castro v. Negrón,* 159 D.P.R. a las págs. 588-590, cuya doctrina fue reiterada en *Mayol v. Torres,* **2005 J.T.S. 50**, a las págs. 1084-1087.

Los vicios aplicables al acto del reconocimiento son los mismos que el Código Civil reconoce como causas de impugnación de un contrato: error, dolo, violencia e intimidación. 31 L.P.R.A. sec. 3404. ■ Véase *Almodóvar v. Méndez,* 125 D.P.R. a las págs. 249-250, cuya doctrina fue reiterada en *Oaks Reyes v. Ortiz Aponte,* 135 D.P.R. 898, 899 (1994). Véase, además, R. Serrano Geyls, *Derecho de Familia de Puerto Rico* Vol. II, a las págs. 1013-1017 (Facultad de Derecho U.I.A. 2002).

Para que el error vicie el consentimiento tiene que recaer sobre el hecho esencial que generó el consentimiento. 31 L.P.R.A. sec. 3405. Y aunque recayere sobre la cosa esencial, *"para que el error anule el [acto] o negocio es preciso que aquél sea excusable; que derive de actos desconocidos del obligado sin que tal desconocimiento haya podido ser evitado con mediana prudencia o diligencia, que no sea imputable al que lo sufre; ni excusa el error cuando la ignorancia del verdadero estado de las cosas se debe a negligencia o a culpa de quien lo invoca".* Capó Caballero v. Ramos, 83 D.P.R. 650, 673 (1961). ■

Aún más, cuando se impugna el reconocimiento por error, como vicio del consentimiento, *"es preciso que el error alegado '...se compruebe y derive de hechos transcendentales que afecten directa y notoriamente la creencia equivocada en que pudo estar el padre de que la madre sólo de él pudo concebir, sin que sea lícito de otro modo la suposición del error, pues equivaldría a autorizar un arrepentimiento y cambio de voluntad, que es en absoluto incompatible con las condiciones de permanencia de todo estado civil, permanencia que afecta al interés social y consiguientemente al orden público'...".* Almodóvar v. Méndez, 125 D.P.R. a la pág. 262, que adopta la doctrina sentada en la Sentencia del Tribunal Supremo Español de 25 de junio de 1909, Jurisprudencia Civil, Tomo 115, a la pág. 499.

A partir de lo dicho, en los casos de impugnación de reconocimiento, el error debe recaer sobre la certeza de que el reconocido fue engendrado por el declarante, lo que justificó su inscripción como hijo suyo. Con la prueba del error lo que se ataca *"es el propio acto jurídico del reconocimiento, y las circunstancias específicas en las que se dio el mismo, no importando así ni atacándose el nexo biológico del que impugna o el que reconoce en relación al hijo reconocido".* Sánchez v. Sánchez, 154 D.P.R., a las págs. 667-668.

Nuestro ordenamiento también permite que el hijo cuestione su filiación. Esta acción puede ser instada por la madre en su representación, cuando el primero sea menor de edad. *Castro v. Negrón,* 159 D.P.R. a la pág. 587; *Sánchez v. Sánchez,* 154 D.P.R. a la pág. 666; *Calo Morales v. Cartagena Calo,* 129 D.P.R. a la pág. 118; *Ramos v. Marrero,* 116 D.P.R. 357, 370-371 (1985); *Robles López v. Guevárez Santos,* 109 D.P.R. 563, 565-567 (1980); véanse, además, *Oaks Reyes v. Ortiz Aponte,* 135 D.P.R. 898 (1994); *Agosto v. Javierre,* 77 D.P.R. 471 (1954).

Cuando la acción es instada por o a nombre del hijo, el Tribunal Supremo de Puerto Rico ha resuelto que no aplica el plazo de caducidad de tres meses establecido por el citado Artículo 117 del Código Civil, sino el término establecido por el Artículo 126, que dispone que la acción puede ser ejercitada en cualquier momento durante la vida del padre o hasta un año después de su muerte. 31 L.P.R.A. sec. 505; *Sánchez v. Sánchez,* 154 D.P.R. a la pág. 672; *Calo Morales v. Cartagena Calo,* 129 D.P.R. a la pág. 120; *Ortiz v. Cruz Pabón,* 99 D.P.R. 237, 243 (1970); *Texidor Díaz v. Tribunal Superior,* 94 D.P.R. 666, 672-673 (1967); *Ortiz Rivera v. Sucn. González Martínez,* 93 D.P.R. 562, 565-566 (1966). ■

**405**

El Artículo 126 del Código Civil añade que si el padre muere durante la menor edad del hijo, éste cuenta con un plazo de hasta cuatro (4) años luego de arribar a la mayoría de edad para ejercitar la acción. 31 L.P.R.A. sec. 505. También se establece que si, luego de la muerte del padre o la madre, apareciere un documento previamente ignorado en el que se reconociese expresamente al hijo, éste tendrá seis meses a partir del hallazgo del documento para instar la acción. 31 L.P.R.A. sec. 505. Estos términos también son de caducidad. *Calo Morales v. Cartagena Calo,* 129 D.P.R. a la pág. 121; *Ortiz Rivera v. Sucn. González Martínez,* 93 D.P.R. a la pág. 599.

Lo anterior significa que el término brindado al padre y a su hijo (o a la madre, en representación de este último) para el ejercicio de la misma acción es diferente. La razón para este trato desigual lo es la protección de la estabilidad de la familia.

El término brindado a los padres para impugnar la legitimidad de sus hijos es corto porque se desea evitar que esta clase de demanda se utilice como táctica en situaciones de divorcio o de tensión familiar. Nuestro ordenamiento, por el contrario, favorece permitir a los hijos una mayor oportunidad de lograr su filiación contra sus verdaderos padres biológicos, en aras de que prevalezca la verdad en cuanto a sus relaciones. *Mayol v. Torres,* **2005 J.T.S. 50**, a las págs. 1089-90; *Calo Morales v. Cartagena Calo,* 129 D.P.R. a la pág. 121.

Al adoptar un término de caducidad de tres meses para la presentación de las acciones de impugnación de reconocimiento, el Tribunal Supremo de Puerto Rico aclaró en *Almodóvar v. Méndez Román* que, en aquellos casos en que la impugnación se base en error, el término para el ejercicio de la acción *"necesariamente debe contarse desde la fecha en que se llevó a cabo el reconocimiento".* 125 D.P.R. a la pág. 261. ▮

Posteriormente, en *Castro v. Negrón*, el Tribunal Supremo de Puerto Rico reconoció que cuando se trata de una acción de impugnación de reconocimiento instada por un padre que ha estado ausente de la jurisdicción, el término para la acción sólo comienza a transcurrir cuando el legitimado adviene en conocimiento de su causa de acción, esto es, cuando conoce del reconocimiento o de la inscripción. 159 D.P.R. a la pág. 600. El Tribunal consideró que *"no puede ejercitarse una acción si de buena fe el titular desconoce que tiene derecho a ejercitarla".* *Castro v. Negrón,* 159 D.P.R. a la pág. 598; *Martínez v. Bristol Myers, Inc.,* 147 D.P.R. 383, 405 (1999).

Lo resuelto en *Castro v. Negrón* es consistente con la doctrina anterior del Tribunal Supremo que ha reconocido que bajo la cláusula del debido proceso de ley un estatuto no puede *"tener el efecto de exigirle a los demandantes cumplir con lo imposible: demandar antes de que tengan conocimiento de su causa de acción".* *Alicea v. Córdova,* 117 D.P.R. 676, 697 (1986). ▮

En *Mayol v. Torres*, **2005 J.T.S. 50**, al adoptarse por el Tribunal Supremo de Puerto Rico la norma española de que un reconocimiento voluntario puede ser impugnado por inexactitud, se podía pensar que el plazo de caducidad de tres meses para el ejercicio de la acción de impugnación bajo esta modalidad se computaría a partir de que el padre tenga conocimiento de que no era el verdadero padre. Esta es la regla en España, de donde proviene nuestra normativa en esta área. *González v. Echevarría,* **2006 J.T.S. 184**, a la pág. 525 (opinión disidente de la Jueza Fiol Matta). Véase, además, el Memorial Explicativo de la Comisión Conjunta Permanente de la Asamblea Legislativa de Puerto Rico para la Revisión y Reforma del Código Civil de Puerto Rico del 11 de enero de 2007, a la pág. 397.

Recientemente, sin embargo, en *González v. Echevarría,* el Tribunal Supremo de Puerto Rico aclaró que la acción de impugnación del reconocimiento debe computarse a partir del acto del reconocimiento, independientemente de que el padre alegue que no conocía que el hijo no era suyo. **2006 J.T.S. 184**, a la pág. 519. El Tribunal Supremo rechazó expresamente adoptar la norma de España.

El Tribunal Supremo consideró que sujetar el inicio de la acción al conocimiento del padre de su causa de

acción atentaría contra la estabilidad de la familia. *González v. Echevarría,* **2006 J.T.S. 184**, a la pág. 519; véase, además, *Mayol v. Torres,* **2005 J.T.S. 50**, a las págs. 1089-90. Aclaró que la filiación no es *"un desenfrenado culto a la biología"* y que *"la relación biológica no es una condición necesaria ni suficiente de la relación filial".* *González v. Echevarría,* **2006 J.T.S. 184**, a la pág. 515.

En la situación de autos, no existe controversia sobre el hecho de que los dos apelantes presentaron las demandas de impugnación luego de expirado el término de caducidad de tres meses para el inicio de las acciones. En el caso KLAN-2007-00267, el apelante presentó su demanda casi siete (7) meses después de la inscripción en el Registro. En el caso KLAN-2007-00614, el apelante instó su acción a los diez (10) meses de la inscripción. En estas circunstancias, carecemos de discreción para dejar sin efecto las sentencias emitidas por el Tribunal de Primera Instancia. Estamos obligados a obedecer los precedentes que hemos reseñado.

## IV

Este panel de jueces reconoce que este resultado puede parecer injusto, a la luz de las circunstancias alegadas en los dos casos que hoy consideramos. No obstante, ésta es la solución compelida por el lenguaje claro de los precedentes del Tribunal Supremo de Puerto Rico, particularmente *González v. Echevarría,* los que estamos obligados a aplicar.

Somos conscientes, sin embargo, de que nuestro ordenamiento no favorece la falsedad en las relaciones jurídicas ni la conducta contradictoria o engañosa. Véanse, *Meléndez Piñero v. Levitt & Sons of P.R.,* 129 D.P.R. 521, 555 (1991); *Martínez v. Colón Franco, Concepción,* 125 D.P.R. 15, 24-28 (1989); *Díaz García v. Aponte Aponte,* 125 D.P.R. 1, 8-12 (1989); *Reyes v. Jusino,* 116 D.P.R. 275, 282-285 (1985); *Sánchez Rodríguez v. López Jiménez,* 116 D.P.R. 172, 182 (1985); *Berríos v. U.P.R.,* 116 D.P.R. 88, 98-99 (1985); *Velilla v. Pueblo Supermarkets, Inc.,* 111 D.P.R. 585, 588 (1981); *Int. General Electric v. Concrete Builders,* 104 D.P.R. 871, 878 (1976); *Reyes v. Sucn. Sánchez Soto,* 98 D.P.R. 305, 310-314 (1970).

Se caracterizan generalmente como *"fraudulentas"*, distintas actuaciones, tanto en el ámbito civil como en el criminal, que persiguen el perjudicar a terceros mediante ardides, engaños o simulaciones. Véanse, e.g., 33 L.P.R. A. sec. 4642, inciso (o) (Supl. 2006), 33 L.P.R.A. sec. 4838 (Supl. 2006) (responsabilidad penal); *Pueblo v. Flores Betancourt,* 124 D.P.R. 867, 877 (1989); 31 L.P.R.A. sec. 3408 (dolo contractual); *VELCO v. Industrial Serv. Apparel,* 143 D.P.R. 243, 251 (1997) (*id.*); *Miranda Soto v. Mena Eró,* 109 D.P.R. 473, 477-478 (1980) (id.); 31 L.P.R.A. sec. 3492(3) (fraude de acreedores); 32 L.P.R.A. Ap. III, R. 49.2, sub-inciso (3) (fraude al tribunal); *Pardo v. Sucn. Stella,* 145 D.P.R. 816, 824-825 (1998) (*id.*); *Municipio de Coamo v. Tribunal Superior,* 99 D.P.R. 932, 939 (1971) (*id.*); *G.A.C. Fin. Corp. v. Rodríguez,* 102 D.P.R. 213, 216-217 (1974) (*id.*)

Por otro lado, la doctrina, según hemos visto, confiere un término distinto a padres e hijos para ejercitar una misma causa de acción. En la práctica, es la madre del menor quien, de ordinario, ostenta su custodia, la que cuenta con la opción de cuestionar la filiación, más allá del término de tres meses que se concede al padre para lo anterior. Tratándose de una clasificación que afecta intereses fundamentales, cabría cuestionar si, según requiere la garantía a la igual protección de las leyes, la alternativa adoptada es la menos drástica para lograr la consecución del interés social apremiante del Estado. *Almodóvar v. Méndez Román,* 125 D.P.R. a la pág. 256; *Com. de la Mujer v. Srio. de Justicia,* 109 D.P.R. 715, 733 (1980). ■

En el presente caso, los apelantes se quejan de que fueron inducidos a reconocer a los menores por las representaciones falsas de las madres de éstos, quienes conocían del engaño y lo ocultaron. Los apelantes alegan que no estaban en posición de ejercitar la acción de impugnación hasta que tuvieron información que les permitió conocer o dudar de que los menores fuesen sus hijos.

Los apelantes insisten en que deben llevarse a cabo las pruebas genéticas que permitirían establecer con certeza si ellos son los verdaderos padres de los menores. Hemos reconocido que la tecnología actual, que no

estaba disponible al adoptarse el Código Civil, permitiría determinar con certidumbre científica la paternidad de los niños. *Rivera Pérez v. León*, 138 D.P.R. a las págs. 845-846; *Ortiz v. Peña*, 108 D.P.R. a las págs. 462-469.

En otros contextos, la disponibilidad de las pruebas de ADN ha requerido atemperar las normas tradicionales que persiguen mantener la estabilidad de las instituciones jurídicas, en pro de hacer justicia a los ciudadanos. Véase, por ejemplo, Annot., *DNA Evidence as Newly Discovered Evidence Which Will Warrant Grant of New Trial or Other Postconviction Relief in Criminal Case*, 125 A.L.R.5th 497 (2005). ■

No olvidamos que el Tribunal Supremo de Puerto Rico ha expresado que:

*"[L]a norma legal no es enemiga –o no debe serlo– de la verdad científica. Son entera y perfectamente reconciliables. ... [L]a realidad científica, al igual que los factores sociales contemporáneos que circundan la vida del derecho... no pueden ser descartados por los tribunales en abono de un estado negatorio de la realidad de las cosas o de la personalidad humana."*

*Moreno Álamo v. Moreno Jiménez*, 112 D.P.R. a las págs. 377-378.

En la situación de autos, como los apelantes instaron sus demandas pocos meses después del acto de reconocimiento, pero fuera del término establecido por el Artículo 117 del Código Civil de Puerto Rico, los foros de primera instancia están impedidos de acoger las demandas e inquirir si los apelantes fueron efectivamente engañados por las madres de los niños que reconocieron como suyos o si incurrieron en error excusable al suponer que lo eran, en cuyo caso ambos reconocimientos pudieron estar viciados por dolo o error excusable. Tampoco pueden indagar si los declarantes actuaron con diligencia para ejercitar su causa de acción, cf., *Vera v. Dr. Bravo*, **2004 J.T.S. 40**, a las págs. 742-743, o si, al momento de presentarse las demandas, se había desarrollado una relación afectiva entre los apelantes y sus hijos, de modo que los menores se verían afectados por la pérdida de esa relación. Cf. *Correa v. Autoridad Fuentes Fluviales*, 83 D.P.R. 144, 160 (1961) (No procede compensación por daños y angustias emocionales a una niña cuyo padre de crianza falleció cuando era muy pequeña, antes de que se desarrollara una relación entre ambos). ■

Aunque estamos de acuerdo en que el reconocimiento no podría impugnarse por un declarante si, conociendo la verdad, aún decide dar su apellido al hijo de su compañera consensual, por las razones que fuera, nos resulta difícil aplicar el mismo trato a quien reconoce un hijo mediante engaño o error excusable. Aceptar la norma que impide a una persona reclamar sus derechos desde que efectivamente conoce los datos que le permiten iniciar informadamente su causa de acción es admitir un trato distinto para el reclamo de derechos análogos ante el foro judicial. Cf. *Martínez v. Bristol Myers, Inc.*, 147 D.P.R. a la pág. 405, citado con aprobación en *Castro v. Negrón*, 159 D.P.R. a la pág. 598, (sabido es que *"no puede ejercitarse una acción si de buena fe el titular desconoce que tiene derecho a ejercitarla"*).

Los jueces de este panel entendemos que la paternidad de los menores del caso de autos podría determinarse con certeza mediante las pruebas solicitadas por los apelantes y que éstos deberían tener derecho a impugnar sus declaraciones si efectivamente sus reconocimientos estuvieron viciados por dolo o error excusable y conocieron de estos hechos luego de transcurrido el plazo adoptado por nuestra jurisprudencia. No obstante, la doctrina sentada por el Tribunal Supremo de Puerto Rico, según reiterada en *González v. Echevarría*, nos impide conceder el remedio solicitado.

Queda para los apelantes la opción de acudir ante el Tribunal Supremo de Puerto Rico y solicitar la reconsideración de los precedentes que fijan el plazo de caducidad de tres meses para impugnar un reconocimiento de paternidad a partir de la fecha del reconocimiento y no desde el momento en que conocen del engaño a que fueron sometidos.

Por los fundamentos expresados, se confirman las sentencias apeladas. █

Lo pronunció y lo manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones